Margarita TIRADO, Plaintiff,

v.

Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.

No. 86 Civ. 4915 (WCC).

United States District Court, S.D. New York.

Feb. 3, 1989.

Michael L. Perlin, Director, Anthony V. Alfieri, Managing Atty., Federal Litigation Clinic, New York Law School, New York City, for plaintiff; Susan Fiore, Law Student, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendant; Sapna V. Raj, Sp. Asst. U.S. Atty., of counsel.

WILLIAM C. CONNER, District Judge.

This action is before the Court on the motion of plaintiff Margarita Tirado ("Tirado") for a remand and rehearing in light of new medical evidence pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Defendant Secretary of Health and Human Services (the "Secretary") opposes on the ground that plaintiff's new evidence does not meet the standards established by the Act for a re-

mand. I conclude that a remand is warranted.

## BACKGROUND

Tirado was born on June 9, 1949. She received a ninth-grade education in Puerto Rico. She can neither speak nor read English, and has never held a job.

On October 15, 1984, plaintiff filed a claim for Supplemental Security Income ("SSI"), alleging disabilities, beginning in June, 1984, due to asthma, high blood pressure, and uterine bleeding. Tirado's application was denied by the Secretary, both initially and upon reconsideration.

An administrative hearing was held on September 9, 1985. Plaintiff appeared *pro se*. On September 26, 1985, Administrative Law Judge Jeffrey W. Kohlman (the "ALJ") held that Tirado was not disabled, and not entitled to SSI benefits. His decision was approved by the Appeals Council on March 9, 1985.

Plaintiff then brought this action under Sections 205(g) and 1631(c)(3) of the Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), for a review of the Secretary's final determination. Both parties promptly filed motions for judgment on the pleadings, and on July 2, 1987, this Court affirmed the Secretary's decision as being supported by substantial evidence. *Tirado v. Bowen*, No. 86 Civ. 4915 (WCC), Slip Op. (S.D.N.Y. July 2, 1987) [1987 WL 12377].

Plaintiff appealed to the Court of Appeals for the Second Circuit submitting, for the first time, certain medical evidence from the Bronx Municipal Center ("Jacobi"). The Second Circuit remanded to this Court observing that:

> The application of [our] standard for the introduction of new evidence presents factual issues that ordinarily are best first passed upon by the district court.... We cannot say that the new evidence is sufficient as a matter of law to require a new hearing. It is not "our job as an appellate court to examine new evidentiary materials and find issues of fact" ....

> The matter must therefore be remanded to the district court in the first instance for it to determine whether the Secretary must conduct further hearings on Tirado's application.

*Tirado v. Bowen*, 842 F.2d 595, 597–98 (2d Cir.1988).

The "new" evidence documents plaintiff's in-patient and out-patient treatment at Jacobi from June 3, 1986 through October 26, 1987. Tirado's medical records show that many of her symptoms were aggravated during this period.

Her blood pressure, which had been moderately high before the Secretary denied her claim,[1] ranged from 185/100 to 230/140 during this period. Joint Appendix at 150, 155, 184, 188, 202 & 267. She was diagnosed as having "uncontrolled" hypertension. Joint Appendix at 153. The condition had already resulted in an enlarged heart. Joint Appendix at 153.

At one of her first visits to Jacobi, Tirado complained of uterine bleeding. Joint Appendix at 208. A physician's report in October, 1987 indicated that this problem had existed for four years. Joint Appendix at 150. He noted that the condition "requir[ed] surgery," Joint Appendix at 153, and that because of it, "[h]ousehold work ... [would cause] abdominal pain." Joint Appendix at 150; *see also* Joint Appendix at 164.

Tirado's asthma, on the other hand, remained mild. While her asthma was regularly mentioned in the records, Joint Appendix at 162, 176 & 186, it was described as "controlled." Joint Appendix at 162. At most, the condition produces a non-productive cough stimulated by exposure to cold, fumes, and dust. Joint Appendix at 151.

The physicians at Jacobi discovered a number of apparently new symptoms during their treatment of Tirado. They reported findings of a neurological deficit, iron

---

1. My earlier Opinion mentions that Tirado's blood pressure was between 110/68 and 150/100. *Tirado v. Bowen*, No. 86 Civ. 4915 (WCC), Slip Op. at 4 (S.D.N.Y. July 2, 1987).

deficiency anemia, hypokalemia, proteinuria, and Bell's palsy. Joint Appendix at 153, 208 & 222.

I must decide whether this evidence warrants a rehearing.

## DISCUSSION

The Second Circuit enunciated the standard that I must follow on this remand as follows:

The Social Security Act provides that a court may order the Secretary to consider additional evidence, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (1982). Thus an appellant must show that the proffered evidence is (1) " 'new' and not merely cumulative of what is already in the record," *Szubak v. Secretary of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir.1984), and that it is (2) material, that is both relevant to the claimant's condition during the time period for which benefits were denied and probative, *see Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir.1975). The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently. *See Szubak*, 745 F.2d at 833; *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981). Finally, claimant must show (3) good cause for her failure to present the evidence earlier. *See Tolany v. Heckler*, 756 F.2d 268, 272 (2d Cir.1985) (good cause shown where new diagnosis was based on recent neurological evaluation and assessment of response to medication required observation period).

*Tirado*, 842 F.2d at 597. I find that plaintiff's evidence satisfies this standard.

Despite the Secretary's protestations, it is clear that both the first and third prongs are met. The recent diagnoses of Tirado indicate that many of her symptoms are worse than they were when her benefits were denied. This evidence can hardly be described as cumulative. Moreover, since the evidence did not exist during the administrative proceedings, there was just cause for not presenting it at that stage. *See Sears v. Bowen*, 840 F.2d 394, 399 (7th Cir.1988) (evidence was new because it did not exist at time of administrative proceedings); *Caulder v. Bowen*, 791 F.2d 872, 878 (11th Cir.1986) ("Nonexistence of the evidence at the time of the administrative proceedings may constitute good cause."). The Secretary's best argument is that the second prong, materiality, is not met.

The materiality requirement is satisfied where: (1) the new evidence is relevant to the claimant's condition during the period for which benefits were denied; and (2) there is a reasonable possibility that the new evidence would have influenced the Secretary to decide the claimant's application differently. *Tirado*, 842 F.2d at 597.

Tirado's new evidence suggests that her health declined after the Secretary's denial of her claim. If the evidence is relevant to Tirado's earlier condition, it is certainly significant enough to influence the outcome on a remand. Convinced that the "reasonable possibility" prong is satisfied here, I turn to the more difficult issue of relevance.

Disputes concerning the relevancy of diagnoses made after a denial of SSI benefits are driven by the tension between the need for finality and the search for truth. This tension was recognized by the Second Circuit in *Tirado:*

We recognize, of course, that claimants ordinarily should have but one opportunity to prove entitlement to benefits, otherwise disability administrative proceedings would be an unending merry-go-round with no finality to administrative and judicial determinations. It is a truism nonetheless, that nothing is permanent except change, and for that reason room must be allowed in the process for the fact that a claimant's medical condition may not be fully diagnosed or comprehended at the time of her hearing.

842 F.2d at 596. In assessing the relevance of Tirado's new evidence, I must attempt to strike a balance between these extremes.

To be relevant, evidence of a recent diagnosis must tend to prove that the claimant was disabled during the period covered by the claim. As the Third Circuit explained in *Szubak v. Secretary of Health & Human Services*, 745 F.2d 831 (3d Cir.1984) (per curiam): "An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously nondisabling condition." *Id.* at 833.

Evidence of surgical operations performed after a denial of benefits have consistently been held relevant to whether the claimants were previously disabled. The Fourth Circuit in *Borders v. Heckler*, 777 F.2d 954 (4th Cir.1985), explained:

> The basic question was whether the back condition was totally disabling for a period of twelve months or more, and the third operation [performed after that period] was clearly relevant to a resolution of that question.... It might also be found to lend significant objective support to the subjective claim of disabling pain.

*Id.* at 955–56 (citation omitted). The Seventh Circuit reached the same conclusion:

> [E]vidence of the 1985 operation is material because it tends to show that Bauzo's earlier operation did not correct her back problem sufficiently to permit her to return to her former jobs. It is also material because it indicates that her back condition is continuing to deteriorate and provides further objective clinical evidence for her claim of disabling pain.

*Bauzo v. Bowen*, 803 F.2d 917, 926 (7th Cir.1986).

The results are less consistent, however, in cases concerning other subsequent medical developments. In such cases, subtle differences in the facts can affect whether the relevancy requirement is met. In this regard, a comparison of two Ninth Circuit cases, *Ward v. Schweiker*, 686 F.2d 762 (9th Cir.1982), and *Kemp v. Weinberger*, 522 F.2d 967 (9th Cir.1975), is useful. The *Ward* court found that the evidence of the claimant's medical history after the denial of benefits was irrelevant:

> Based on medical reports in 1975 and 1978, the Secretary determined that Ward was able to engage in light work and therefore no longer disabled. In the context of this record, Dr. Bachenberg's report, dated 1980, appears to indicate, at most, a more recent deterioration of condition.... Although later discovered evidence may be considered probative of disease or disability ... the new medical evidence was not material to the Secretary's action terminating benefits as of 1975, although it could form the basis for a new claim.

*Id.* at 765–66 (citations & footnote omitted). The *Kemp* court, on the other hand, held that such evidence tended to prove an earlier disability:

> Although the medical observations discussed in those reports were made after the relevant period for disability under the Social Security Act, they are nonetheless relevant here, where claimant has previously introduced evidence as to her history of osteoarthritis and where the present arthritic condition is the result of a degenerative process.

522 F.2d at 969. *See also Caulder v. Bowen*, 791 F.2d 872, 877–78 (11th Cir.1986) (Evidence of a post-denial diagnosis was "relevant and probative in that it pertains to a condition that Caulder listed in his applications at the administrative level as a source of his disability. The evidence also contains a medical opinion on the presence of the impairment during the time period for which benefits are sought. The fact that Dr. Craddock's treatment and examination of Caulder took place later in the proceedings does not undermine the weight to be given his diagnosis.").

Where there is uncertainty, courts tend to lean towards granting the remand. In *Sears v. Bowen*, 840 F.2d 394 (7th Cir. 1988), the claimant requested a remand to consider the diagnosis of a physician who began treating him shortly after the administrative hearing. The court noted that the new diagnosis might have little to do with

the claimant's prior condition. *Id.* at 401. Nevertheless, it remanded to the Secretary:

> There is little doubt that Sears' mental impairments are of long standing, even if they may not have been so severe as to render him disabled since 1980. Even if a timing problem exists, we conclude, under the admittedly unusual circumstances of this case, that the combination of long-standing psychiatric problems, which may alone be disabling, and important biological information about the claimant, none of which was before the Secretary, is material.

*Id.* (footnote omitted).

The new evidence in this case calls into question the findings upon which the Secretary based his denial of Tirado's claim. It is, therefore, material to whether plaintiff was disabled during the relevant period.

For example, my affirmance of the ALJ's decision rested, in part, on evidence that plaintiff's gynecological problems had ceased: "The doctor's records indicate that by March 5, 1985 plaintiff's vaginal problem was stable and plaintiff had no complaints about bleeding. Since the Plaintiff's vaginal problems lasted only four months, plaintiff can not be disabled under the Act." *Tirado,* No. 86 Civ. 4915 (WCC), Slip Op. at 10. Since the new evidence tends to prove that Tirado's uterine bleeding has continued for four years, it is relevant to her claim of disability.

I also upheld the ALJ on the ground that Tirado's "blood pressure was finally under good control." *Id.* at 12. This conclusion must be reconsidered in light of the new evidence. It is certainly possible that Tirado's high blood pressure, which is now uncontrolled, is the result of an earlier disability. Indeed, one physician at Jacobi reported that Tirado's condition has persisted for thirteen years. Joint Appendix at 150.

On the other hand, the new evidence concerning plaintiff's asthma should not be considered on the remand. The evidence suggests that her asthma has persisted. It does not, however, call into question the ALJ's conclusion that Tirado's asthma "was not severe enough to constitute a disability." *Tirado,* No. 86 Civ. 4915

(WCC), Slip Op. at 12. Indeed, the new evidence confirms the finding that plaintiff's asthma is controlled, and is not likely to produce a different result on remand.

While Tirado has not demonstrated that her new symptoms (neurological deficit, iron deficiency anemia, hypokalemia, proteinuria, and Bell's palsy) relate to an earlier disability, the ALJ may, on remand, consider this evidence to the extent he finds it material. The ALJ's medical expertise may enable him to discover a relation between the new symptoms and Tirado's original claim that is not immediately apparent from the record.

## CONCLUSION

For the reasons stated above, plaintiff's motion for a remand and rehearing in light of new medical evidence is granted. Administrative Law Judge Jeffrey W. Kohlman is directed to consider plaintiff's new evidence of hypertension and uterine bleeding, and to conduct hearings in a manner not inconsistent with this Opinion.